# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN MOMOT, | Case No.: 2:09-cv-00975-RLH-LRL |
| Plaintiff, | |
| vs. | **O R D E R** |
| DENNIS MASTRO, individually, MICHAEL MASTRO, individually, JEFF MASTRO, individually, DOES I through X and ROE Corporations I through X, inclusive, | (Motion to Change Venue–#88; Motion to Dismiss Counterclaims–#98) |
| Defendants. | |

Before the Court is Defendants Dennis Mastro, Michael Mastro, and Jeff Mastro's **Motion to Change Venue** (#88), filed March 23, 2010. The Court has also considered Plaintiff John Momot's Opposition (#92), filed April 9, 2010, and the Mastros' Reply (#97), filed April 16, 2010.

Also before the Court is Momot's **Motion to Dismiss Counterclaims** (#93), filed April 12, 2010.  The Court has also considered the Mastros' Opposition (#98), filed April 20, 2010, and Momot's Reply (#101), filed April 30, 2010.

## BACKGROUND

This action arises out of a business relationship between John Momot and the Mastros.  During the course of their relationship, which began in 1974, Momot contributed

1  investment capital for the Mastros to develop various restaurant businesses in California and
2  Arizona. Momot alleges that over the years the Mastros misappropriated his investment capital
3  and wrongfully increased their own profits at the expense of his investment capital. Specifically,
4  Momot alleges the Mastros (1) wrongfully took sole ownership of the "Mastro" name as an asset
5  separate from its restaurants without obtaining prior authorization from their investors (including
6  Momot); (2) forged Momot's name and pledged his investments in order to obtain financing for its
7  restaurant operations; and (3) wrongfully withheld information regarding their plans to build a
8  restaurant on Rampart Boulevard in Las Vegas.
9         In 2006, the Mastros began to consider selling their restaurants to an outside
10 investment group. On January 22, 2007, the Mastros agreed to sell all of their restaurants to
11 Premiere Restaurant Groups LLC for $180 million. In addition to selling these restaurants, the
12 Mastros sold the assets of three Arizona-based LLCs. Momot alleges he held a membership
13 interest in all three of these companies. The Mastros and Premiere Restaurant Groups
14 memorialized their sale agreement in writing ("the Purchase Agreement").
15        On March 8, 2007, the purchasers and sellers of the restaurants and LLCs
16 (including Momot and the Mastros) entered into an agreement (the "Allocation Agreement") in
17 which they acknowledged that the allocation of the purchase price among the sellers was true, fair,
18 and accurate. The Allocation Agreement primarily addressed how the sale of the restaurants
19 would ultimately be executed and how the proceeds from the sale would be allocated among the
20 sellers. It also includes the following arbitration clause: "If a dispute arises out of or relates to this
21 Agreement, the relationships that result from this Agreement, the breach of this Agreement, or the
22 validity or application of any of the provisions of this Section [], and if the dispute cannot be
23 settled through negotiation, the dispute shall be resolved exclusively by binding arbitration." (Dkt.
24 #26, Brief, Ex. 3.)
25        Momot alleges that when the sale was ultimately concluded, he recovered
26 significantly less on his investments than the Mastros promised he would. According to Momot, it

AO 72
(Rev. 8/82)

was only after the Allocation Agreement was finalized that he realized the Mastros had wrongfully used his investment funds and wrongfully pledged his interest in their businesses by forging his name on loan documents. On April 16, 2009, Momot filed suit in Nevada state court alleging claims for breach of fiduciary duty, accounting, conversion, unjust enrichment, theft and embezzlement, alter ego, monies owed, civil conspiracy, civil RICO, failure to register securities, fraud, usurped corporate opportunity, and punitive damages. The Mastros subsequently removed the case to this Court.

Shortly after removal, the parties began disputing whether this case should be heard in this Court or whether arbitration was mandatory in Maricopa County, Arizona. Following removal, the Mastros filed an action in the United States District Court for the District of Arizona in which they sought, under the Federal Arbitration Act, 9 U.S.C. § 4, to compel Momot to arbitrate his claims in Arizona. Momot then asked this Court to intervene and stop the arbitration from proceeding. After reviewing the terms of the Allocation Agreement and considering additional briefing submitted by both parties, this Court ordered that the arbitration proceedings in Arizona be terminated. On March 26, 2010, the Mastros filed an answer to Momot's Complaint and brought counterclaims for breach of contract, abuse of process, fraud, and negligent misrepresentation. Now before the Court is the Mastros' motion for an order transferring venue to Arizona and Momot's motion to dismiss the Mastros' counterclaims. For the reasons discussed below, the Court denies the Mastros' motion to transfer venue and grants in part and denies in part Momot's motion to dismiss.

**DISCUSSION**

**I.      Motion to Transfer Venue**

    **A.      Legal Standard**

28 U.S.C. § 1404(a) states: "[f]or the convenience of the parties and witnesses and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of this statute is to "prevent the waste

AO 72
(Rev. 8/82)

'of time, energy, and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. The Barge FBL-585*, 364 U.S. 19, 26–27 (1960)). The statute has two main requirements: (1) that the district to which defendants seek to have the action transferred is one in which the action "might have been brought," and (2) that the transfer is for the convenience of parties and witnesses, and in the interest of justice.

District courts possess broad discretion when determining whether to transfer venue under § 1404(a). *Jones v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000). Nonetheless, in examining a § 1404(a) motion, courts should give the plaintiff's choice of forum considerable weight, *Lou v. Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987), and the defendant must make a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Consequently, "courts will not transfer an action unless the 'convenience' and 'justice' factors strongly favor venue elsewhere." *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000). However, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968).

**B.     Analysis**

The Court considers the two prongs of the venue analysis as follows.

**1.     Might Have Been Brought**

Under 1404(a), district courts may transfer a case only to a district where the case could have originally been brought. This means subject matter jurisdiction, personal jurisdiction, and venue must be proper in the transferee court. *AT&T Co. v. Milgo Elec. Corp.*, 428 F. Supp. 50, 52 (S.D.N.Y. 1977). The Court has no problem concluding that these requirements are met here. First, subject matter jurisdiction is proper in the District of Arizona because Momot is a Nevada resident, Defendants are all Arizona residents, and more than $75,000 is in controversy.

AO 72
(Rev. 8/82)

Thus, federal diversity jurisdiction is present in this case. *See* 28 U.S.C. § 1332. Second, the District of Arizona can exercise personal jurisdiction over Defendants because they are in-state Defendants with obvious contacts with Arizona. *Helicopteros Nacionales de Colombia v. Hall*, 466 US 408 (1984). Finally, venue is proper in Arizona because all Defendants reside there. *See* 28 U.S.C. § 1391.

## 2. Convenience of Parties and Witnesses and the Interests of Justice

In order to be entitled to a change in venue, the Mastros must also show that the convenience of the parties and the interests of justice "strongly favor" moving the case to Arizona. *Ravelo Monegro*, 211 F.3d at 513. Having reviewed the evidence submitted by both parties, the Court finds that the convenience of the parties and the interests of justice do not strongly favor transferring this case to the District of Arizona.

First, important events took place in Nevada, thus making Momot's choice of venue both appropriate and worthy of judicial deference. In order to convince Momot to sign the Allocation Agreement, Dennis Mastro traveled to Las Vegas in April 2007 to meet with Momot and Oscar Goodman. After this meeting, Momot agreed to sign the Allocation Agreement, which enabled the Mastros to sell all of their assets to Premiere Restaurant Groups, LLC. Momot alleges that after the sale was completed, he realized that the Mastros mishandled his investment funds prior to their decision to sell their restaurants. Momot further alleges the Mastros made many misrepresentations regarding their handling of this investments over the course of their lengthy business relationship, much of which took place in Nevada. Given these assertions, the Court finds a number of operative facts in this case took place in Nevada and that Momot's choice of venue must be given great weight.

Second, the Court finds that litigating this case in Arizona would be only marginally more convenient, if at all. Although a majority of the potential witnesses reside in Arizona, at least three important witnesses reside in Nevada, and both parties have stated that numerous witnesses live in other states. Therefore, no matter where this case is litigated, a number

of witnesses will have to travel to the courthouse or have their depositions entered into evidence in their absence. For this reason, the Court concludes the location of the witnesses does not weigh heavily in favor of transfer. In addition, the Court is not persuaded by the Mastros' allegation that this case should be transferred because important documentation is located in Arizona. For one, Momot alleges this assertion is untrue because his accountant obtained the relevant documentary evidence when reviewing Momot's investments in the Mastros' businesses prior to Momot's decision to file suit. But even if most of the documents must be sent from Arizona, the Court is not persuaded that this fact overcomes the presumption against transferring venue. In today's world, documents are increasingly portable and can in many instances be transferred electronically. And even if the parties have to cover the expense of shipping documents, the Court finds this cost is worth incurring in order to hear the case in Momot's preferred choice of venue.

In conclusion, having considered the evidence in this case, the Court finds the convenience of the parties and the interests of justice do not "strongly favor" transferring venue. Accordingly, the Court denies the Mastros' motion to transfer venue.

**II.  Motion to Dismiss the Mastros' Counterclaims**

The Court addresses the Mastros' counterclaims in the order they were raised in their answer.

**A.  Breach of Contract**

In the Allocation Agreement, which indicated how the proceeds of the sale would be divided, Momot agreed not to file suit against the Mastros for issues "arising out" of the agreement. (Dkt. #89, Counterclaim ¶ 22.) The Mastros now allege Momot is liable for breach of contract because he breached the Allocation Agreement by filing suit against them. The Court dismisses this counterclaim for the same reason it terminated arbitration in Arizona: Momot's claims against the Mastros do not arise out of the Allocation Agreement. As the Court held in its February 2, 2009 Order (#61), "Momot's claims do not arise out of or relate to the agreement because they arise out of the Mastros' alleged mishandling of his investment funds prior to the

Mastros' decision to sell their restaurants." Thus, just as the arbitration clause does not require Momot to arbitrate his claims in Arizona, the covenant-not-to-sue clause does not prevent Momot from alleging claims that arise independent of the Allocation Agreement. For this reason, the Court grants Momot's motion to dismiss this counterclaim.

### B. Abuse of Process

"Abuse of process is a tort recognized to provide a remedy for cases in which legal procedure has been set in motion in proper form, with probable cause, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Rashid v. Albright*, 818 F. Supp. 1354, 1358 (D. Nev. 1993) (citing Prosser & Keaton, *Law of Torts* 896 (1984)). To successfully state a claim for abuse of process, a plaintiff must allege: (1) the defendant had an ulterior purpose in the underlying lawsuit other than resolving a legal dispute, and (2) the plaintiff willfully and improperly used the legal process to accomplish that purpose. *LaMantia v. Redisi*, 38 P.3d 877, 880 (Nev. 2002).

#### 1. Ulterior Purpose

An "ulterior purpose" includes any improper motive underlying the issuance of legal process. *Dutt v. Kremp*, 844 P.2d 786, 790 (Nev. 1992). In their counterclaim, the Mastros allege Momot filed suit against them "in bad faith and for an improper purpose" because he invented the story that the Mastros' forged his signature in an attempt to "extort an unjust settlement" from them. (Dkt. #89, Counterclaim ¶¶34, 37.) Taking this assertion as true, the Court finds the Mastros have properly identified an ulterior purpose and that they satisfy the first element of the abuse of process test.

#### 2. Improper Act in Use of Legal Process

A party does not improperly use the legal process simply by filing suit with malicious intent or by carrying out the legal process to its authorized conclusion, albeit with bad intentions. *Laxalt v. McClatchy*, 622 F. Supp. 737, 752 (D. Nev. 1985); Prosser, *Law of Torts*, § 121, 857 (4th ed. 1971). Rather, in order to state an abuse of process claim, the improper act must

7

be "so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure." *Nienstedt v. Wetzel*, 651 P.2d 876, 882 (Ariz. Ct. App. 1982). This improper act normally occurs when a party engages in abusive action *after* the filing of the complaint. *Laxalt*, 622 F. Supp. at 737.

The Court finds the Mastros have not satisfied the second element of the abuse of process analysis because they have not alleged facts indicating that Momot's lawsuit constitutes an improper legal act. The Mastros' entire abuse of process claim rests on their assertion that Momot threatened to file suit simply to coerce an unjust settlement. Even if this assertion is true, however, it does not amount to a viable abuse of process claim: filing suit for an improper motive does not constitute an improper act lacking a "legitimate function as a . . . litigation procedure." *Nienstedt*, 651 P.2d at 882; *see also Rashid v. Albright*, 818 F. Supp. 1354, 1359 (D. Nev. 1993) (finding that bringing a lawsuit in order to obtain settlement leverage was an acceptable use of process); *Nevada Credit Rating Bureau v. Williams.* 503 P.2d 9, 13 (Nev. 1972) (finding abuse of process where a plaintiff attached an entire property, worth over $30,000, to secure a debt of less than $5,000). Thus, because the Mastros have not alleged facts showing that Momot engaged in an improper legal act, the Court grants Momot's motion to dismiss this counterclaim.

**C. Fraud**

The Mastros also bring a counterclaim for fraud, alleging that Momot intentionally misrepresented his belief that the Allocation Agreement was fair and reasonable and he intended to comply with it. (Dkt. #89, Counterclaim ¶¶ 65–68.) In order to state a claim for fraud, a plaintiff must allege that (1) defendant made a false representation; (2) defendant knew or believed the representation to be false or defendant had an insufficient basis for making the representation; (3) defendant intended to induce plaintiff to rely on the misrepresentation; and (4) plaintiff suffered damages as a result of his reliance. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998); *see also Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629 (Ariz. App. 1982).

/

AO 72
(Rev. 8/82)

The Court finds the Mastros having adequately stated a claim for fraud. The Mastros have clearly alleged that Momot intentionally misled them regarding his intention to comply with the agreement in order to later bring suit against them for allegedly mishandling his investments. This is sufficient to state a claim for fraud. In addition, the Court finds the Mastros have complied with Rule 9's heightened pleading standard: the Mastros have stated the substance of Momot's alleged misrepresentations, where he made them (Oscar Goodman's office) and when he made them (April 2007). Accordingly, the Court finds the Mastros have adequately stated a claim for fraud, and it denies Momot's motion to dismiss this claim.

**D.    Negligent Misrepresentation**

Finally, the Mastros bring a claim for negligent misrepresentation. According to the Mastros, Momot is liable for negligent misrepresentation because he negligently misled them regarding his intentions to abide by the Allocation Agreement. A party is liable for negligent misrepresentation when it "supplie[s] false information for the guidance of others" and does so without "exercis[ing] reasonable care or competence in obtaining or communicating the false information." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998).

The Mastros negligent misrepresentation claim fails because it is entirely conclusory and void of relevant facts. The Mastros allege merely that Momot "failed to exercise reasonable care or competence in communicating the false information." (Dkt. #98, Counterclaim ¶ 84.) The Mastros do not indicate what information Momot negligently supplied or how he failed to take reasonable care before supplying this information. Because the Mastros do not supply these necessary facts, their counterclaim is speculative, and it fails under the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In coming to this conclusion, the Court notes that the Mastros' assertion that Momot intentionally misled them regarding his intention to be bound by the Alliance Agreement only supports their claim for fraud, not their claim for negligent misrepresentation. The Mastros make it clear that Momot purposefully and intentionally misled on this issue; thus, this factual assertion cannot be used to support the

Mastros' claim that Momot negligently misled them. Accordingly, the Court grants Momot's motion to dismiss this claim.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendants' Motion to Change Venue (#88) is DENIED.

IT IS FURTHER ORDERED that Momot's Motion to Dismiss Counterclaims (#93) is GRANTED in part and DENIED in part as follows:

The Court DENIES Momot's Motion to Dismiss Defendants' claim for fraud and GRANTS his Motion to Dismiss Defendants' claims for breach of contract, abuse of process, and negligent misrepresentation.

Dated: July 6, 2010.

_____
**ROGER L. HUNT**
**Chief United States District Judge**