UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN MOMOT, | Case No.: 2:09-cv-00975-RLH-LRL |
| Plaintiff/Counterdefendant, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#148) |
| DENNIS MASTRO, individually; MICHAEL MASTRO, individually; JEFF MASTRO, individually; does I through X, inclusive, | |
| Defendants/Counterclaimants. | |

Before the Court is Defendants Dennis Mastro, Michael Mastro, and Jeff Mastro's **Motion for Summary Judgment** (#148, filed Nov. 3, 2010) on Plaintiff John Momot's tenth cause of action. The Court has also considered Momot's Opposition (#145, filed Dec. 10, 2010), and the Mastros' Reply (#148, filed Jan. 7, 2011).

**BACKGROUND**

This action arises out of a business relationship between John Momot and the Mastros. During the course of their relationship, which began in 1974, Momot contributed investment capital for the Mastros to develop various restaurant businesses in California and Arizona. Momot alleges that over the years the Mastros misappropriated his investment capital

and wrongfully increased their own profits at the expense of his investment capital. Specifically, Momot alleges that the Mastros (1) wrongfully took sole ownership of the "Mastro" name as an asset separate from its restaurants without obtaining prior authorization from their investors (including Momot); (2) forged Momot's name and pledged his investments in order to obtain financing for its restaurant operations; and (3) wrongfully withheld information regarding their plans to build a restaurant on Rampart Boulevard in Las Vegas.

In 2006, the Mastros began to consider selling their restaurants to an outside investment group. On January 22, 2007, the Mastros agreed to sell all of their restaurants to Premiere Restaurant Groups LLC for $180 million. In addition to selling these restaurants, the Mastros sold the assets of three Arizona-based LLCs. Momot alleges he held a membership interest in all three of these companies. The Mastros and Premiere Restaurant Groups memorialized their sale agreement in writing ("the Purchase Agreement").

Momot alleges that when the sale was ultimately concluded, he recovered significantly less on his investments than the Mastros promised he would. According to Momot, it was only after the agreement allocating the sale proceeds was finalized that he realized the Mastros had wrongfully used his investment funds and wrongfully pledged his interest in their businesses by forging his name on loan documents. On April 16, 2009, Momot filed suit in Nevada state court alleging claims for breach of fiduciary duty, accounting, conversion, unjust enrichment, theft and embezzlement, alter ego, monies owed, civil conspiracy, civil RICO, failure to register securities, fraud, usurped corporate opportunity, and punitive damages. The Mastros subsequently removed the case to this Court.

Shortly after removal, the parties began disputing whether this case should be heard in this Court or whether arbitration was mandatory in Maricopa County, Arizona. Following removal, the Mastros filed an action in the United States District Court for the District of Arizona in which they sought, under the Federal Arbitration Act, 9 U.S.C. § 4, to compel Momot to arbitrate his claims in Arizona. Momot then asked this Court to intervene and stop the arbitration

AO 72
(Rev. 8/82)

from proceeding. After reviewing the terms of the Allocation Agreement and considering additional briefing submitted by both parties, this Court ordered that the arbitration proceedings in Arizona be terminated. On March 26, 2010, the Mastros filed an answer to Momot's Complaint and brought counterclaims for breach of contract, abuse of process, fraud, and negligent misrepresentation. The Court dismissed all of the Mastros' claims save the fraud claim. Now before the Court is the Mastros' motion for summary judgment on Momot's tenth cause of action, failure to register securities. For the reasons discussed below, the Court grants the motion.

**DISCUSSION**

**I.     Legal Standard**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

1    The moving party bears the burden of showing that there are no genuine issues of
2 material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry
3 its burden of production, the moving party must either produce evidence negating an essential
4 element of the nonmoving party's claim or defense or show that the nonmoving party does not
5 have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."
6 *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the
7 moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to
8 "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.
9 The nonmoving party "may not rely on denials in the pleadings but must produce specific
10 evidence, through affidavits or admissible discovery material, to show that the dispute exists,"
11 *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply
12 show that there is some metaphysical doubt as to the material facts." *Bank of America v. Orr*, 285
13 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of
14 evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

15 **II.    Analysis**

16    The Mastros move for summary judgment based on two arguments. First, the
17 Mastros argue that the statute of limitations bars Momot's claim. Second, the Mastros argue that
18 the securities they sold Momot were exempt from registration. The Court will address each
19 argument in turn.

20    **A.    Statute of Limitations**

21    A plaintiff must bring any claim for failing to register securities "within the earliest
22 of 2 years after the discovery of the violation, 2 years after discovery should have been made by
23 the exercise of reasonable care, or 5 years after the act, omission or transaction constituting the
24 violation." NRS § 90.670. This dispute involves three separate transactions which could possibly
25 constitute violations of registration requirements. The first transaction occurred in 1999.
26 Therefore, it clearly falls outside of the statute of limitations period as Momot did not file suit until

April 20, 2009. The second and third transactions were both consummated on January 5, 2006, when Momot signed subscription agreements to purchase membership interests in two separate LLCs. The question then is when the statute of limitations began to run. If the statute did not begin to run when the parties originally effectuated the transaction, Momot's claim may fall within the statutory period. However, if the statute began to run when Momot signed the subscription agreements, then Momot filed suit outside of the two year statutory period.

After review of the evidence, the Court finds that the statute of limitations began to run on January 5, 2006, when Momot signed the subscription agreements to purchase the membership interests. The subscription agreements Momot signed warranted that Momot understood that the membership interests had not been registered with the relevant state authorities in reliance on a state law exemption. This is the only fact that Momot needed in order to bring suit for failure to register. However, Momot contends that the statute of limitations did not begin to run at that time because he was led to believe that the securities did not need to be registered. This is true, the subscription agreements did state that the securities were not registered because of a statutory exemption, but it is also immaterial.

Momot confuses knowledge of the facts giving rise to a cause of action with knowledge of the facts' legal relevance. "Under federal law, 'the limitations period accrues when a party knows or has reason to know of the injury' which is the basis of the cause of action." *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). This means the "focus is on the [Plaintiff's] knowledge of or access to facts rather than on [his] discovery of legal theories." *Massey v. Litton*, 669 P.2d 248, 252 (Nev. 1983). *See also Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 929 (Cal. 1988) ("it is the discovery of facts, not their legal significance, that starts the statute" of limitations period.) Here, Momot, an attorney, was put on notice that the Mastros had not registered the securities when he signed the subscription agreements. At that point he had all of the facts necessary so that he could have investigated and determined whether he agreed with the applicability of any exemption the Mastros claimed. Therefore, Momot knew the facts that formed

1  the basis of his cause of action, he was merely ignorant of their alleged legal significance.

2  Accordingly, Momot's claim is barred by the statute of limitations as he discovered the facts of the

3  alleged violation more than two years before bringing suit on April 16, 2009.

    **B.    Registration Exemption**

Additionally, the Court would grant summary judgment in the Mastros' favor because the Mastros' claimed registration exemption did apply to the transaction. Momot contends that the exemption the Mastros relied upon, NRS § 90.530(11), requires that the transaction be a wholly intrastate transaction. Momot provided no support for this assertion other than analogizing to a non-analogous federal exemption, 15 U.S.C. § 77c(a)(11). Further, the Nevada Uniform Securities Act is based on the Uniform Securities Act of 1985, *Fullerton v. State*, 8 P.3d 848, 849 n.3 (Nev. 2000), and the comments to the Uniform Securities Act of 1985 show that there is no requirement that transactions be wholly intrastate to qualify for an exemption, Unif. Sec. Act § 801 cmt. 1 (amended 1988), 7c U.L.A. 315–16 (2006). Finally, the Mastros' provided affidavit testimony showing that the actual requirements for the exemption were met and Momot failed to provided contrary evidence. Therefore, the Court would grant summary judgment for these reasons as well.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that the Mastros' Motion for Summary Judgment (#140) is GRANTED.

Dated: April 11, 2011.

_____
ROGER L. HUNT
Chief United States District Judge