UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

JOHN MOMOT,

          Plaintiff,

v.

DENNIS MASTRO, *et al.*,

          Defendants.

2:09-cv-00975-RLH-LRL

**O R D E R**

    Before the court is plaintiff's Motion to Compel Responses to Plaintiff's First Set of Requests for Production of Documents (#149). The court has considered the motion (#149), defendants' Opposition (#151), and plaintiff's Reply (#157).

    This action arises out of a business relationship between John Momot and the Mastros. During the course of their relationship, which began in 1974, Momot contributed investment capital for the Maestros to develop various restaurant businesses in California and Arizona. Momot alleges that over the years the Mastros misappropriated his investment capital and wrongfully increased their own profits at his expense. Specifically, Momot alleges, among other things, that the Mastros (1) wrongfully took sole ownership of the "Mastro" name as an asset separate from its restaurants without obtaining prior authorization from their investors (including Momot); and (2) forged Momot's name and pledged his investments in order to obtain financing for its restaurant operations.

    In 2006, the Mastros considered selling their restaurants to an outside investment group. On January 22, 2007, the Mastros agreed to sell all of their restaurants to Premiere Restaurant Groups LLC ("Premier") for $180 million. In addition to selling these restaurants, the Mastros sold the assets of three LLCs. Momot alleges he held a membership interest in all three of these companies. The Mastros and Premiere Restaurant Groups memorialized their sale agreement in writing ("the Purchase Agreement").

On March 8, 2007, the purchasers and sellers of the restaurants and LLCs (including Momot and the Mastros) entered into an agreement (the "Allocation Agreement") in which they acknowledged that the allocation of the purchase price among the sellers was true, fair, and accurate. The Allocation Agreement primarily addressed how the sale of the restaurants would ultimately be executed and how the proceeds from the sale would be allocated among the sellers.

Momot alleges that when the sale was concluded, he recovered significantly less on his investments than the Mastros promised he would. According to Momot, it was only after the Allocation Agreement was finalized that he realized the Mastros had wrongfully used his investment funds and wrongfully pledged his interest in their businesses by forging his name on loan documents to obtain a loan from Comerica Bank in December, 2001. The loan money was used as startup capital for (1) Mastro's City Hall Steakhouse/Drinkwater's ("Drinkwater's"); (2) Mastro's Ocean Club, Kierland; and (3) Mastro's Beverly Hills Steakhouse. On April 16, 2009, Momot filed suit in Nevada state court asserting claims for breach of fiduciary duty, accounting, conversion, unjust enrichment, theft and embezzlement, alter ego, monies owed, civil conspiracy, civil RICO, failure to register securities, fraud, usurped corporate opportunity, and punitive damages. On May 29, 2009, the Mastros removed the case to this court.

On June 8, 2010, Momot served his First Set of Requests for Production of Documents on each of the defendants. Defendants responded on July 14, 2010, objecting to several of the requests as not relevant or not reasonably calculated to lead to the discovery of admissible evidence. In a letter dated July 27, 2010, Momot set forth his opinion regarding the insufficiency of the defendants responses and his legal arguments as to the discoverability of the requested information. Counsel corresponded over the next several months regarding production of the requested documents. Despite counsels' efforts to resolve these issues without court intervention, eight requests remain in dispute.[1] They are:

1. 2007 Balance Sheet for Mastro's City Hall Steakhouse/Drinkwater's;

---

[1] Although the motion (#149) indicates that nine requests are at issue, in his reply (#157), Momot withdrew one of the requests as an error.

2. 2007 Income/Loss Statement for Mastro's City Hall Steakhouse/Drinkwater's;

3. 2007 Balance Sheet for Mastro's Ocean Club, Kierland;

4. 2007 Income/Loss Statement for Mastro's Ocean Club, Kierland;

5. 2006 Balance Sheet for Mastro's Beverly Hills Steakhouse;

6. 2007 Balance Sheet for Mastro's Beverly Hills Steakhouse;

7. 2007 Income/Loss Statement for Mastro's Beverly Hills Steakhouse

8. State and Federal Tax Returns for 1999-2009 for each of the Defendants, whether filed jointly with another or individually or as principal member of a business entity.

With regard to the request for the Mastros' tax returns, Momot represents that he agreed to forego attempts to obtain other financial information from the Mastros if the tax returns were provided. Mot. (#149) at 4. On September 22, 2010, the court entered the protective order (#136) in this case. Discovery closes on June 22, 2011. Order (#144).

**A. Balance Sheets and Income/Loss Statements**

Momot requests 2007 income/loss statements and balance sheets for Drinkwater's, Mastro's Beverly Hills, and Mastro's Ocean Beach, and the 2006 balance sheet for Mastro's Beverly Hills, on the ground that the discovery is relevant to his unjust enrichment claim, and in order to evaluate the fairness of the purchase distribution after the sale of the businesses to Premier. The sale to Premier, which involved these restaurants, was finalized on May 15, 2007. Exh. 8 to Mot. (#149).

In Nevada, the elements of an unjust enrichment claim or "quasi contract" are: (1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) acceptance and retention of the benefit by the defendant (4) in circumstances where it would be inequitable to retain the benefit without payment. *Kennedy v. Carriage Cemetery Services, Inc.*, 727 F.Supp.2d 925, 932 (D.Nev. 2010) (citing *Leasepartners Corp. v. Robert L. Brooks Trust*, 113 Nev. 747, 942 P.2d 182, 187 (1997) (citations omitted)). Even an indirect benefit will support an unjust enrichment claim. *Topaz Mut. Co., Inc. v. Marsh*, 108 Nev. 845, 839 P.2d 606, 613 (1992) (recognizing an actionable unjust enrichment claim where there was an indirect benefit conferred upon the

defendant).

Momot's unjust enrichment claim is premised on allegations that defendants forged his signature to negative pledges used to secure the Comerica loan, and then used that money to fund projects, including Drinkwater's, Mastro's Beverly Hills and Mastro's Ocean Club; and also that defendants used the Mastro's tradename and dress, which allegedly belonged to Even Par LLC,[2] without authority to do so. Under Nevada law, the measure of damages for an unjust enrichment claim is the benefit received by defendants. *See Crocket & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 583 F.3d 1232, 1238 (9th Cir. 2009) ("The basis of recovery on quantum meruit ... is that a party has received from another a benefit which is unjust for him to retain without paying for it. Accordingly, the proper measure of damages under a quantum meruit theory of recovery is the reasonable value of the services.") (internal citation and quotation omitted); *see also Scaffidi v. United Nissan*, 425 F.Supp.2d 1159, 1170) (D.Nev. 2005) ("In a case with a quantum meruit or unjust enrichment theory of recovery, the proper measure of damages is the 'reasonable value of [the] services.'") (quoting *Asphalt Prod. Corp. v. All Star Ready Mix, Inc.*, 111 Nev. 799, 898 P.2d 699, 701 (1995). The income/loss statements and balance sheets are therefore relevant to the claim, insofar as they relate to establishing the total value received from the three restaurants by defendants. While defendants advance arguments regarding the ultimate merits of Momot's claims, they fail to undermine Momot's arguments as to relevance of the discovery to the claims, nor do they suggest some alternative means for Momot to obtain the same information. Defendants must produce the income/loss statements and balance sheets.

**B. Tax Records**

Momot requests the "State and Federal Tax Returns for 1999-2009 for each of the Defendants, whether filed jointly with another or individually or as principal member of a business entity." He argues that the tax returns are discoverable because the defendants' financial condition is relevant to his punitive damages claim. Defendants argue that the tax records are not discoverable because Momot has

---

[2] Momot held a membership in Even Par, LLC.

4

not set forth a prima facie, factual basis for the punitive damages claim. Defendants further maintain that Momot can obtain the information he seeks through other sources which have already been disclosed, including payroll reports, financial statements, general ledger detail reports, bank statements, canceled checks, and payroll tax reports. Opp'n (#151) at 9. Additionally, defendants note, the management fees paid to the managing company are available in the records of the companies, as is the compensation paid to the defendants. *Id.* Momot replies that these documents do not provide him a full picture of the defendants' financial condition, and therefore he must have the tax returns.

"A defendant's financial condition is relevant to the pursuit of punitive damages." *Allstate Ins. Co. v. Nassiri*, 2011 WL 318101 at * 3 (quoting *United States v. Autumn Ridge Condominium Assoc.*, 265 F.R.D. 323, 327 (N.D. Ind. 2009). Although the Ninth Circuit has not defined the parameters of the dissemination of financial information during discovery when punitive damages are alleged, *EEOC v. Cal. Psychiatric Transitions*, 258 F.R.D. 391 (E.D. Cal. 2009), most courts do not require the plaintiff to make a prima facie showing of merit on its punitive damage claim before permitting discovery of a defendant's net worth. *Nassiri*, 2011 WL 318101 at *3 (citing *Autumn Ridge*, 265 F.R.D. at 328). The countervailing approach, and the one chosen by the Supreme Court of Nevada, is that a plaintiff must first allege specific facts sufficient to support a claim for punitive damages. *See e.g. Hetter v. Eighth Judicial Dist. Court of State In and For County of Clark,* 110 Nev. 513, 519, 874 P.2d 762, 766 (Nev. 1994) (Nevada law allows for the discovery of income tax returns when related to the issue of punitive damages, so long as the requesting party has demonstrated some factual basis for the punitive damages claim); *Chenowith v. Schaaf*, 98 F.R.D. 587, 589 (W.D. Pa. 1983) (denying discovery of tax and other financial records because the complaint revealed nothing more than conclusory statements to indicate "a real possibility that punitive damages would be an issue sufficient to allow the information requested").

Under either approach, Momot has met his burden. Since he requested punitive damages in the complaint, the standard under the majority approach is met. *Cal. Psychiatric Transitions*, 258 F.R.D. at 395. He has met the higher burden of the minority approach, inasmuch as he has set forth specific

1  facts to support a claim for punitive damages. While defendants correctly note that Nevada law requires
2  proof by clear and convincing evidence of "oppression, fraud or malice, express or implied," for an
3  award of punitive damages, NRS 42.005; *see* Opp'n (#151) at 9, that is the standard at trial. For
4  discovery purposes, Nevada caselaw requires only that the plaintiff "demonstrate[] some factual basis
5  for its punitive damage claim." *Hetter*, 874 P.2d at 766. Momot has set forth facts, which if proved,
6  support his claim for punitive damages based on fraud, breach of fiduciary duty, and forgery among
7  others. Accordingly, Momot may seek discovery related to defendants' financial condition for the
8  purposes of his punitive damages claim.

9  Momot requests tax records to evaluate the defendants' financial condition. While tax records
10 are not absolutely privileged, *Heathman v. District Court,* 503 F.2d 1032, 1035 (9th Cir. 1974), the
11 Ninth Circuit recognizes that "a public policy against unnecessary public disclosure [of tax returns]
12 arises from the need, if the tax laws are to function properly, to encourage taxpayers to file complete
13 and accurate returns." *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir.
14 175); *see also Heathman*, 503 F.2d at 1035; *Aliotti v. Vessel Sonora*, 217 F.R.D. 496, 497 (N.D. Cal.
15 2003). The court may only order the production of the defendants' tax returns if they are relevant and
16 when there is a compelling need for them because the information sought is not otherwise available.
17 *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 189 (D.Kan.1997); *Aliotti*, 217 F.R.D. at 497-98; *Gattegno v.*
18 *Pricewaterhousecoopers,* LLP, 205 F.R.D. 70, 71-72 (D. Conn. 2001); *Terwillger v. York Int'l Corp.*,
19 176 F.R.D. 214, 216-17 (W.D. Va. 1997). "'The party seeking production has the burden of showing
20 relevancy, and once that burden is met, the burden shifts to the party opposing production to show that
21 other sources exist from which the information is readily obtainable.'" *A. Farber and Partners, Inc. v.*
22 *Garber*, 234 F.R.D. 186, 191 (C.D. Cal. 2006) (quoting *Hilt*, 170 F.R.D. at 189); *see also Terwilliger*
23 *v. York Int'l Corp.*, 176 F.R.D. at 217.

24 As explained, Momot has met his burden of showing the tax information is relevant to his
25 punitive damages claim. Defendants argue that Momot already has the information he seeks, via payroll
26 reports, financial statements, general ledger detail reports, bank statements, canceled checks, and payroll

tax reports. Opp'n (#151) at 9. While these documents may provide a picture of the various restaurants' financial condition, defendants do not explain how these records provide a picture of their individual financial conditions. Defendants must produce the tax returns.

Momot's request for returns dating back to 1999, however, is overly broad. When allowing discovery into a defendant's financial records related to a punitive damages claim, courts generally limit the time period for production of such information to reflect the defendant's current condition. *See e.g. Autumn Ridge*, 265 F.R.D. at 328 ("Other district courts addressing this issue have concluded that financial records over approximately the past two years is sufficient to establish a defendant's current net worth."); *EEOC v. Cal. Psychiatric Transitions*, 258 F.R.D. at 395 (requiring production of financial information for a two year period); *S. Cal. Housing Rights Ctr. v. Krug*, 2006 WL 4122148 at *3 (C.D. Cal. 2006) (limiting discovery related to defendants' financial condition to two years and denying plaintiff's request for tax records). Production shall be limited to defendants' 2007-2009 returns.

Accordingly, and for good cause shown,

IT IS ORDERED that plaintiff's Motion to Compel Responses to Plaintiff's First Set of Requests for Production of Documents (#149) is granted to the extent set forth herein.

DATED this 12th day of May, 2011.

**LAWRENCE R. LEAVITT**
**UNITED STATES MAGISTRATE JUDGE**